"O"

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| FREDA HARVEY, | ) | Case No. EDCV 05-530 AN |
| Plaintiff, | ) | MEMORANDUM AND ORDER |
| v. | ) | |
| JO ANNE B. BARNHART, COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | ) | |
| Defendant. | ) | |

## I. INTRODUCTION

Pursuant to 42 U.S.C. § 405(g), Plaintiff is seeking judicial review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her claims for widow's disability insurance benefits ("WDIB") and supplemental security income ("SSI") pursuant to Titles II and XVI of the Social Security Act ("Act"). Both parties have consented to proceed before the undersigned Magistrate Judge. In accordance with the Court's Case Management Order, the parties have filed a joint stipulation and request for an order summarily deciding the issues concerning remand and/or immediate payment of benefits ("JS").

## II. **BACKGROUND**

The parties are familiar with the background facts and evidence in the record. Accordingly, only the facts and evidence that are helpful to understanding and explaining

the Court's decision will be discussed below.

In the JS, Plaintiff contends that the Administrative Law Judge ("ALJ") erred by: (1) failing to give proper consideration to the Global Assessment of Functioning ("GAF")[1] score assessed by her treating doctors, Swati Thacker, M.D. and Elizabeth Tamoush, Ph.D.; and (2) rejecting her complaints of side effects from medication. The Commissioner disagrees.

After reviewing the parties' respective contentions and the record as a whole, the Court finds Plaintiff's contentions lack merit and are rejected for the reasons expressed by the Commissioner in her portions of the JS and the following reasons.

### 1.   Plaintiff's Treating Doctors

Plaintiff began receiving mental health treatment at the San Bernardino County Department of Behavioral Health in November 2001.  [Administrative Record ("AR") at 222-42.]  In February 2002, Dr. Thacker completed a mental status examination and psychiatric evaluation of Plaintiff. [AR at 234-37.] Dr. Thacker diagnosed Plaintiff with panic disorder and dysthymic disorder, and assessed a GAF score of 55.  [AR at 234.] Dr. Thacker also reported that Plaintiff was feeling overwhelmed with her daily routine. [AR at 230-32.] Dr. Tamoush completed a clinical assessment of Plaintiff in November 2001 and assessed Plaintiff with a "moderate" dysfunction rating.  [AR at 242.]

Plaintiff claims that the ALJ failed to give proper weight to the opinions of Drs. Thacker and Tamoush.  Specifically, Plaintiff claims that the ALJ improperly ignored Dr. Thacker's reports that Plaintiff had feelings of being overwhelmed and Dr. Tamoush's finding that Plaintiff had a "moderate" dysfunction rating.  [JS at 3-5.]  Plaintiff also faults the ALJ for failing to specifically state whether he was accepting or rejecting Dr. Thacker's GAF assessment.  [JS at 3-5.]  Plaintiff's claims lack merit.

---

[1]    The GAF scale is a "hypothetical continuum of mental health-illness" used to determine "psychological, social, and occupational functioning."   Diagnostic and Statistical Manual of Mental Disorders (4th ed.) ("DSM-IV") at 32.  The GAF scale goes from 0-90.  The relevant scores for this case are 51-60, indicating moderate symptoms or moderate difficulty with social and occupational functioning.  *Id.* at 34.

Page 2

Consistent with the opinions of Drs. Thacker and Tamoush, the ALJ found that Plaintiff suffers from severe mental impairments of anxiety disorder and dysthymic disorder.  [AR at 16-17.]  The ALJ also found that Plaintiff was unable to learn new things on a daily basis, perform fast paced jobs such as rapid assembly line or jobs requiring hyper-vigilance, or solve new problems more than once a day, but that Plaintiff was capable of performing moderately complex tasks, including tasks involving "up to five steps of instructions in a relatively routine object oriented work setting." [AR at 17.] While the ALJ did not specify a reason for rejecting the GAF score assessed by Dr. Thacker, the ALJ had no obligation to do so.  *See, e.g., Howard v. Commissioner of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002)(finding that ALJ did not err by failing to reference claimant's GAF scores).  The GAF scores were intended to be used to make treatment decisions.  *See* DSM-IV at 32.  Neither the Social Security regulations nor case law require an ALJ to determine the extent of an individual's disability based solely on her GAF score.   And, although the ALJ did not specifically mention Plaintiff's complaints of feeling overwhelmed in her daily routine, the ALJ was  not required to discuss all evidence presented, but only why significant, probative evidence was rejected. *See Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984).  As discussed below, the ALJ properly discounted Plaintiff's subjective complaints. *Morgan v. Commissioner of Social Security*, 169 F.3d 595, 602 (9th Cir. 1999)("A physician's opinion of disability 'premised to a large extent upon the claimant's own accounts of his symptoms and limitations' may be disregarded where those complaints have been 'properly discounted.'" (quoting *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989)).

In evaluating Plaintiff's mental impairment and residual functional capacity, the ALJ adopted the findings of the non-examining medical expert Joseph Malancharuvil, M.D.  [AR at 18-19, 439-47.]  Dr. Malacharuvil's opinion constituted substantial evidence in support of the ALJ's decision because it was corroborated by the opinion of examining physician Louis Fontana, M.D.  *See Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)(holding that the findings of a nontreating, nonexamining physician can

Page 3

1   amount to substantial evidence, so long as other evidence in the record supports those

2   findings); *Magallanes v. Bowen*, 881 F.2d 747, 752 (9th Cir. 1989).  Dr. Fontana

3   conducted a complete psychiatric evaluation of Plaintiff in September 2004. [AR at 356-

4   60.]  He diagnosed Plaintiff with panic disorder without agoraphobia, assessed a GAF

5   score of 60, and found that Plaintiff should be able to accept instructions from

6   supervisors, interact appropriately with co-workers and the public, perform work

7   activities on a consistent basis without additional supervision, maintain regular

8   attendance in the workplace, complete a normal workday/workweek, and perform simple,

9   repetitive tasks, as well as more detailed and complex tasks.  [AR at 359.]  As Dr.

10  Fontana based his opinion on independent clinical findings, the ALJ's evaluation of

11  Plaintiff's mental impairment was supported by substantial evidence. *Andrews*, 53 F.3d

12  at 1041 (where the opinion of the claimant's treating physician is contradicted, and the

13  opinion of a nontreating source is based on independent clinical findings that differ from

14  those of the treating physician, the opinion of the nontreating source may itself be

15  substantial evidence).

16          **2.     Plaintiff's Side Effects From Medication**

17          Plaintiff alleged that her medications have significant side effects such as fatigue

18  and dizziness.  [AR at 114.]  Plaintiff argues that the ALJ rejected these complaints

19  without providing adequate reasons for doing so.  [JS at 11-14.]

20          In assessing credibility, "the ALJ may use 'ordinary techniques of credibility

21  evaluation,' such as considering the claimant's reputation for truthfulness and any

22  inconsistent statements in [his] testimony." *Tonapetyan v. Halter*, 242 F.3d 1144, 1148

23  (9th Cir. 2001)(quoting *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989)).  If a claimant

24  produces objective medical evidence that he suffers from an ailment that could cause

25  pain, "the ALJ can reject the claimant's testimony about the severity of [her] symptoms

26  only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*,

27  80 F.3d 1273, 1281 (9th Cir. 1996)).  The ALJ may not reject a claimant's statements

28  regarding her limitations solely because they are not supported by objective evidence.

1  *Tonapetyan*, 242 F.3d at 1147-48.  However, "[w]here the evidence is susceptible to more
2  than one rational interpretation," the ALJ's conclusions must be upheld.  *Morgan,* 169
3  F.3d at 599.

4     Here, the ALJ discredited Plaintiff's testimony, citing her treatment history and
5  daily activities.   The ALJ gave a detailed explanation supporting these reasons.  For
6  example, although Plaintiff complained of "severe" pain in her arms, neck, back, leg, and
7  shoulders, Plaintiff's medical treatment had been conservative.  [AR at 20.]  Plaintiff's
8  doctors had not recommended surgery or injections for pain.  [AR at 20]; *Fair*, 885 F.2d
9  at 604 (finding that claimant's allegations of persistent, severe pain and discomfort belied
10 by "minimal conservative treatment" and lack of hospitalization for evaluation of
11 treatment of alleged symptoms).  And, although Plaintiff claimed that she suffered from
12 depression, difficulty being around people, and panic attacks two to three times a week,
13 she had not received mental health treatment or participated in counseling since 2003.
14 [AR at 19-20, 440.] Plaintiff's complaints of disabling pain were undermined by the fact
15 that she had not seen her primary physician since 2004. [AR at 19-20.]  The ALJ was
16 permitted to draw rational inferences concerning Plaintiff's credibility based upon her
17 failure to seek treatment. *Flaten v. Secretary*, 44 F.3d 1456, 1464 (9th Cir. 1995); *Fair*,
18 885 F.2d at 603 (inadequately explained failure to seek treatment may be sufficient to
19 discredit allegation of disabling pain).  Further, while the ALJ found that Plaintiff had
20 impairments that could reasonably be expected to produce pain, the ALJ found that
21 Plaintiff's claims of disabling pain were inconsistent with her ability to engage in a wide
22 range of household activities (*i.e.,* cooking, washing dishes and laundry, dusting, grocery
23 shopping, sewing, light housecleaning, and attending church on a regular basis).  [AR at
24 19-20]; *Light v. Social Security Admin*., 119 F.3d 789, 792 (9th Cir. 1997)
25 (inconsistencies between testimony and conduct may be considered in weighing a
26 claimant's credibility).  Thus, although the ALJ did not specifically address Plaintiff's
27 complaints of dizziness and fatigue, the ALJ considered the entire record, set forth
28 specific reasons, applied the correct legal standards, and based his evaluation of

1   Plaintiff's credibility on substantial evidence in the record.  Plaintiff's argument that the

2   ALJ failed to properly consider the side effects from her medication is rejected.

3                                   **III.  CONCLUSION**

4            Accordingly, the Court finds the ALJ's determination of non-disability is free of

5   legal error and supported by substantial evidence in the record. Therefore, Plaintiff's

6   request for an order directing the payment of benefits or remanding this case for further

7   proceedings is DENIED, and the Commissioner's request for an order affirming the

8   Commissioner's final decision and dismissing the action is GRANTED.  The clerk shall

9   enter judgment, close the file and terminate all pending motions.

10

11  DATED:        May 2, 2006              /s/ Arthur Nakazato
                                          ARTHUR NAKAZATO
12                                        UNITED STATES MAGISTRATE JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28